Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 862 | **DATE** | 3/29/2001 |
| **CASE TITLE** | ROBERT W. SCHUMACHER vs. COMMUNICATIONS CONTRACTORS, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's motion for summary judgment is granted as to claims II, III, and IV. Plaintiff's Count I is remanded for lack of federal jurisdiction.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | MAR 30 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 43 |
| | Mail AO 450 form. | | LS docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | LG | courtroom deputy's initials | 01 MAR 29 date mailed notice | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS,
# EASTERN DIVISION.

DOCKETED
MAR 3 0 2001

ROBERT W. SCHUMACHER, )
)
Plaintiff, ) Case No. 00 C 862
)
v. ) The Honorable John W. Darrah
)
COMMUNICATIONS CONTRACTORS, )
INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Robert W. Schumacher has filed a four-count Complaint against Defendant Communications Contractors, Inc. ("CCI"), alleging: (I) retaliatory discharge in violation of the Illinois Workers' Compensation Act, (II) discrimination in violation of the Americans with Disabilities Act ("ADA"), (III) multiple violations of the Family and Medical Leave Act ("FMLA"), and (IV) discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). CCI has moved for summary judgment pursuant to FED.R.CIV.P. 56. For the reasons that follow, Defendant's Motion for Summary Judgment on Counts II, III, and IV is GRANTED, and Plaintiff's Count I is REMANDED for lack of federal jurisdiction pursuant to FED.R.CIV.P. 12(h)(3).

## LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P.

43

56(c); *Patel v. Allstate Insurance Co.*, 105 F.3d 365, 367 (7th Cir. 1997). The movant bears the initial burden of establishing that the record presents no genuine issue of material fact. *Essex v. United Parcel Service, Inc.*, 111 F.3d 1304, 1308 (7th Cir. 1997). Then the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).

The non-movant cannot succeed in creating a factual dispute solely by resting on allegations in the pleadings but must produce evidence showing there is a disputed issue for trial. *Selan v. Kiley*, 969 F.2d 560, 564 (7th Cir. 1992). In order to withstand summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Only genuine disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

## FACTS

Considering the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and drawing all reasonable inferences from the evidence in Plaintiff's favor, the facts, for purposes of resolving the summary judgment motion, are as follows.

Plaintiff Robert Schumacher was born on February 7, 1936. (Pl.'s 56.1 ¶ 1). Plaintiff was fifty-eight when he was hired as a journeyman technician by CCI on April 27, 1994. (Pl.'s 56.1 ¶ 2). Plaintiff was a member of the International Brotherhood of Electrical Workers Union Local 134 ("Local Rule 134"). (Def.'s 56.1 ¶ 1).

Defendant CCI is an Illinois corporation with its principal offices in Chicago, Illinois.

(Def.'s 56.1 ¶ 2). CCI is an electrical contractor in the business of telecommunications wiring. (Def.'s 56.1 ¶ 2). It presently employs approximately 100 to 125 people at its Chicago facility, including managers, supervisors, staff, and union electricians/data technicians. (Def.'s 56.1 ¶ 2).

Plaintiff was hired by Brian Fitzgibbons. (Pl.'s 56.1 ¶ 4). Fitzgibbons is the CCI employee responsible for staffing and managing CCI's work crews. (Def.'s 56.1 ¶ 11). Fitzgibbons is not an officer of CCI but has supervisory authority to hire, fire, and generally manage CCI's labor force. (Def.'s 56.1 ¶ 11). Fitzgibbons periodically lays off CCI employees during slow times and has done so one or two times per year in the past. (Def.'s 56.1 ¶ 12). All personnel decisions concerning union employees are made by either Fitzgibbons or CCI's President, Edman Lis. (Def.'s 56.1 ¶ 16).

CCI's collective bargaining agreement ("the agreement") with Local 134 covers employees involved in the telecommunications industry. (Def.'s 56.1 ¶ 17). Dave Rehberg is the Local 134 official who represents CCI's employees on union matters. (Def.'s 56.1 ¶ 17). Rehberg represents union members on issues such as the negotiation of agreements and the handling of grievances and arbitrations. (Def.'s 56.1 ¶ 18). The agreement contains a provision allowing members to take ninety days per year of unpaid medical leave. (Def.'s 56.1 ¶ 21). Members needing more than ninety days' leave must make a written request to the employer asking for an extension. (Def.'s 56.1 ¶ 21). From 1993 to 1994, the Union's medical leave was only thirty to sixty days. (Def.'s 56.1 ¶ 22). The plan was amended to incorporate a ninety-day provision to conform to the requirements of the FMLA. (Def.'s 56.1 ¶ 22).

While at CCI, Schumacher worked as a journeyman data technician on a variety of jobs under a number of different foremen and project managers. (Def.'s 56.1 ¶ 24). Schumacher's work history with CCI was "generally satisfactory." (Def.'s 56.1 ¶ 24). In 1995, Schumacher suffered a back

injury on a CCI job site for which he filed a workers' compensation claim. (Def.'s 56.1 ¶ 25). Following the injury and several days' recuperation, he returned to work at CCI. (Def.'s 56.1 ¶ 25). In 1996, Schumacher took approximately five weeks of unpaid medical leave, pursuant to the agreement, to undergo non-work related neck surgery. (Def.'s 56.1 ¶ 26).

On Friday, April 17, 1998, Schumacher was working at the Carmax job site in Hillside, Illinois, moving fiberoptic cable with another CCI employee, Ben Woods. (Def.'s 56.1 ¶ 27). While he was moving the cables, he suffered a torn aorta. (Pl.'s 56.1 ¶ 7). Mike Starnes, CCI's acting site foreman, immediately called for emergency assistance. (Def.'s 56.1 ¶ 28). An ambulance arrived shortly thereafter, and Schumacher was taken to the emergency room at Elmhurst Hospital. (Def.'s 56.1 ¶ 28). In the meantime, Starnes called one of CCI's corporate officers, Chris Walsh to inform him of the situation. (Def.'s 56.1 ¶ 28). Walsh instructed Starnes to go with Schumacher to the hospital and wait there until Schumacher's family arrived and to fully inform them of what had happened. (Def.'s 56.1 ¶ 29). Starnes went to the hospital in accordance with Walsh's instructions. (Def.'s 56.1 ¶ 29). After Schumacher's wife arrived at the hospital, Walsh told Starnes to return to the job site and secure Schumacher's personal belongings and to offer to return Schumacher's car to his home. (Def.'s 56.1 ¶ 30).

Plaintiff worked with three other CCI employees at the Carmax job site-Michael Starnes, Joseph Horn, and Ben Woods. (Pl.'s 56.1 ¶ 7). As of October 12, 1998, Michael Starnes was thirty-seven years old, Joseph Horn was thirty-six years old, and Ben Woods was in his "mid-twenties." (Pl.'s 56.1 ¶ 8, 14, 15).

Schumacher was replaced "with another journeyman somewhere along the line." (Pl.'s 56.1 ¶ 60). Between April 17 and October 1, 1998, CCI hired eight journeyman technicians. (Pl.'s 56.1

¶ 65). The last person hired during this period was hired on September 3, 1998. (Pl.'s 56.1 ¶ 65). On December 11, 1998, CCI hired a twenty-nine year-old journeyman. (Pl.'s 56.1 ¶ 104).

Plaintiff contends that on July 17, 1998, he had a telephone conversation with Mr. Zezulka, a CCI employee, in which he informed Zezulka that he would need additional time for rehabilitation before he would be able to return to work; and Zezulka allegedly responded that he would have no problem with that. (Pl.'s 56.1 ¶ 50). The only support Plaintiff offers for this conversation is a reference to his own answers to Defendant's interrogatories. Zezulka denies that this conversation ever took place. (Def.'s Res. to Pl.'s 56.1 ¶ 50).

On or about October 8, 1998, Schumacher telephoned CCI and told Zezulka that he was ready to return to work. (Def.'s 56.1 ¶ 42). Zezulka told him to obtain a medical release and call him back. (Def.'s 56.1 ¶ 42). During the conversation, Zezulka referenced Schumacher's suit against CCI for workers' compensation. (Pl.'s 56.1 ¶ 54).

Zezulka informed Fitzgibbons about Plaintiff's call, and Fitzgibbons asked to speak to Plaintiff when he called back. (Def.'s 56.1 ¶ 43). When Schumacher called back several days later, he had already faxed a medical release form from his cardiologist stating that he had recovered from his heart attack and could return to work. (Def.'s 56.1 ¶ 43).

In the meantime, Fitzgibbons determined that there were no positions open on any of CCI's work crews. (Def.'s 56.1 ¶ 44). Fitzgibbons informed Ed Lis, CCI's president, that Schumacher had called asking where he should report to work. (Def.'s 56.1 ¶ 45). Since no one had heard from Schumacher in a long time and he had not worked since April, Lis questioned whether CCI had any obligation to reinstate him. (Def.'s 56.1 ¶ 45). Lis consulted the collective bargaining agreement provisions concerning medical leave. (Def.'s 56.1 ¶ 46). Schumacher had been off work for a

period in excess of ninety days and had failed to provide CCI with a written request for an extension of leave. (Def.'s 56.1 ¶ 46). Lis believed that Plaintiff had failed to comply with the agreement, and CCI was therefore not required to reinstate him. (Def.'s 56.1 ¶ 46). Lis decided to terminate Plaintiff's employment. (Pl.'s 56.1 ¶ 62). Lis believed that Mr. Schumacher had abandoned his job. (Pl.'s 56.1 ¶ 102).

Lis contacted Dave Rehberg of Local 134 and discussed with him Schumacher's request to return to CCI and his failure to conform to the ninety-day leave provisions of the agreement. (Def.'s 56.1 ¶ 47). They concluded that under the agreement, CCI was authorized to deny Schumacher's request to return to work. (Def.'s 56.1 ¶ 47). Lis then told Fitzgibbons to notify Schumacher of CCI's decision and refer him to the union for an explanation from Rehberg. (Def.'s 56.1 ¶ 48). On October 12, 1998, Fitzgibbons spoke with Schumacher by telephone and notified him of his termination and referred him to the union for an explanation. (Def.'s 56.1 ¶ 48). Mr. Rehberg never received an explanation from CCI as to why they did not terminate Plaintiff immediately after his ninety-day leave had expired. (Pl.'s 56.1 ¶ 63).

Plaintiff then contacted the union and spoke to Rehberg who explained to Schumacher that his termination was based on the ninety-day medical leave provisions of the agreement. (Def.'s 56.1 ¶ 49). Rehberg asked Schumacher if he had sent CCI a request to extend the ninety-day leave period. (Def.'s 56.1 ¶ 49). Schumacher admitted that he had not done so. (Def.'s 56.1 ¶ 49).

Schumacher admitted that he does not have a disability and is not prevented from engaging in any major life activity. (Def.'s 56.1 ¶ 53).

Mr. Fitzgibbons knew that workers' compensation claims against CCI causes CCI's insurance premiums to go up. (Pl.'s 56.1 ¶ 79). CCI puts its insurance out to bid every year. (Pl.'s

56.1 ¶ 98). Of the 14 individuals who have filed workers' compensation claims with CCI between January 1, 1995, through June 14, 2000, eight individuals are no longer employed with CCI. (Pl.'s 56.1 ¶ 36).

## ANALYSIS

Plaintiff's Complaint alleges: (I) retaliatory discharge in violation of the Illinois Workers' Compensation Act, (II) discrimination in violation of the ADA, (III) two violations of the FMLA, and (IV) discrimination in violation of the ADEA.

*Count I: Retaliatory Discharge*

Plaintiff's Count I based on retaliatory discharge in violation of the Illinois Workers Compensation Act is remanded pursuant to FED.R.CIV.P. 12(h)(3) since summary judgment is granted on Plaintiff's federal claims. This opinion does not address the validity of Plaintiff's Count I.

*Count II: ADA*

Plaintiff claims that Defendant violated the ADA when it terminated him after he had been allegedly disabled. (Compl. 5). Plaintiff further alleges that between April 17 and October 12, 1998, he was a qualified individual with a disability under Section 101(8) of the ADA, 42 U.S.C. § 12111(a). Plaintiff has offered no direct evidence of disability discrimination.

To prove an ADA discrimination claim indirectly, Plaintiff is required to show: (1) he is disabled within the meaning of the ADA; (2) his work performance met the employer's legitimate expectations; (3) he was discharged; and (4) circumstances surrounding his discharge indicated that it was more likely than not that his disability was the reason for the adverse action. *Leffel v. Valley Financial Services,* 113 F.3d 787, 793 (7th Cir. 1997). Plaintiff's ADA claim fails because he has

failed to show the first and fourth elements.

Plaintiff has not shown that he is a qualified individual with a disability under the ADA. Plaintiff claims that his torn aorta constituted a disability; yet, he admitted that, by October of 1998, he had recovered sufficiently to return to work. A "disability" under the ADA is "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(2). "Intermittent, episodic impairments are not disabilities, the standard example being a broken leg." *Van Zande v. State of Wisconsin Department of Administration*, 44 F.3d 538, 543 (7th Cir. 1995). The temporary nature of Plaintiff's torn aorta precludes it from qualifying as a disability under the ADA.

Furthermore, Plaintiff has not shown that circumstances surrounding his discharge indicated that it was more likely than not that his disability was the reason for the adverse action.

Summary Judgment is granted on Plaintiff's Count II.

### Count III: FMLA

Plaintiff claims that Defendant violated the FMLA when it failed to designate Schumacher's leave as FMLA leave in compliance with 29 CFR § 825.208(a). Plaintiff further argues that CCI violated the FMLA when it failed to restore Schumacher to his former position after an allegedly qualified leave. (Compl. 7).

Plaintiff's FMLA claim fails since Defendant's failure to formally designate Plaintiff's leave as FMLA time does not extend the ninety days allegedly provided under the collective bargaining agreement. *See McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999)(29 C.F.R. § 825.208 is "invalid and unenforceable" to the extent it extends employees leave beyond the ninety days mandated by the FMLA). At least one other court in this district has reached a similar

conclusion. *See Neal v. Children's Habilitation Center*, 1999 WL 706117 (N.D. Ill)(Gettleman, J.).

Consequently, Defendant's failure to reinstate Plaintiff after his leave did not violate the FMLA since his leave exceeded that which is provided under the FMLA. Summary judgment is granted on Plaintiff's Count III.

*Count IV: ADEA*

Plaintiff alleges that Defendant discriminated against him in violation of the ADEA when it terminated his employment. (Compl. 8).

Plaintiff may prove discrimination under the ADEA through direct evidence or indirectly through the burden-shifting mechanism of *McDonnell Douglas*. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). In this case, Plaintiff has presented no direct evidence of age discrimination. Direct evidence of intentional discrimination entails proof of acknowledgment by the Defendant of a discriminatory motive. *Troupe v. May Department Store*, 20 F.3d 821, 823 (7th Cir. 1994).

To prove discrimination indirectly, Plaintiff must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was meeting his employer's legitimate performance expectations; and (4) his employer treated similarly situated employees who were not in the protected class more favorably. *Maarouf v. Walker Manufacturing Co.*, 210 F.3d 750, 751 (7th Cir. 2000).

Plaintiff has failed to meet the fourth element of a *prima facie* case of age discrimination in that he has failed to show that his employer treated similarly situated employees who were not in the protected class more favorably. Plaintiff has not shown that Defendant retained substantially younger employees when they took leaves of absence and filed workers' compensation claims.

Furthermore, the fact that Defendant decided to hire Plaintiff when he was fifty-eight years old (Pl.'s 56.1 ¶ 2) makes it unlikely that Defendant illegally discriminated against him on the basis of age when it decided to terminate his employment at age sixty-two.

Summary Judgment is granted on Plaintiff's Count IV.

## CONCLUSION

For the reasons stated herein, Defendant's Motion for Summary Judgment is GRANTED as to claims II, III, and IV. Plaintiff's Count I is remanded for lack of federal jurisdiction.

**IT IS SO ORDERED.**

*[signature]*

John W. Darrah, Judge

United States District Court

Date: March 29, 2001